[Cite as *Prime Equip. Group, Inc. v. Schmidt*, 2016-Ohio-3472.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

Prime Equipment Group, Inc.,                    :

        Plaintiff-Appellee,              :           No. 15AP-584
                                               (C.P.C. No. 13CV-9703)

v.                                              :

                                          (REGULAR CALENDAR)

Jack G. Schmidt, Jr.,                           :

        Defendant-Appellant.             :

---

### D E C I S I O N

#### Rendered on June 16, 2016

---

**On brief:** *Onda, LaBuhn, Rankin & Boggs Co., LPA*, *Timothy S. Rankin*, and *Gregory A. Goetz*, for appellee. **Argued:** *Timothy S. Rankin.*

**On brief:** *The Anelli Law Firm, LLC*, and *Dianna M. Anelli*, for appellant. **Argued:** *Dianna M. Anelli.*

---

APPEAL from the Franklin County Court of Common Pleas

PER CURIAM.

{¶ 1} Defendant-appellant, Jack G. Schmidt, Jr., appeals from a decision of the Franklin County Court of Common Pleas granting summary judgment in favor of plaintiff-appellee, Prime Equipment Group, Inc. ("Prime"). The judgment declares Schmidt to be a vexatious litigator pursuant to Ohio's vexatious litigator statute, R.C. 2323.52, and imposes filing limitations on him in future litigation.

### I. Facts and Procedural History

{¶ 2} Most, but not all, of the litigation underlying the present vexatious litigator action relates to Schmidt's divorce from his former wife, Gina G. Gasbarro; two lawsuits involving Schmidt and his own relatives are also implicated. Prime, a business operated by Gasbarro's brothers, became involved as a defendant in an ancillary action initiated by

Schmidt in Athens County.  While defending that case, Prime initiated the present vexatious litigator action against Schmidt with a complaint (and subsequent amended complaint) under R.C. 2323.52 in the Franklin County Court of Common Pleas, General Division.  The amended complaint itemizes Schmidt's allegedly vexatious conduct in six different actions involving Gasbarro, Prime, and various other entities or persons, most of which were dismissed for lack of subject-matter jurisdiction by the trial courts involved.

{¶ 3}  Under R.C. 2323.52(D)(1), Prime sought to bar Schmidt from instituting legal proceedings without leave of court in any Ohio court of common pleas, municipal court, county court, or the Court of Claims of Ohio.  Prime also requested a temporary restraining order and a preliminary injunction.  The court referred the latter two requests to a magistrate for disposition.  The magistrate first denied the temporary restraining order.  The magistrate then held an extensive preliminary injunction hearing on October 7 and 8, 2013, which produced much of the testimony and other evidence invoked in later proceedings.  The magistrate denied the request for a preliminary injunction on the basis that an injunction would essentially anticipate a declaration that Schmidt was a vexatious litigator and thereby alter the status quo in the litigation and impair Schmidt's ability to proceed in related cases.

{¶ 4}  Schmidt did not file an answer to Prime's complaint. Instead, he filed a motion to dismiss in which he asserted that Prime did not have standing to bring the vexatious litigator action.  The trial court deferred consideration of the motion until the conclusion of the case.  Prime moved for summary judgment on the merits, supporting the motion with a transcript of testimony from the preliminary injunction hearing, additional affidavits, depositions, and documentary exhibits.

{¶ 5}  The trial court rendered two decisions on May 15, 2015 that concluded the matter and form the basis for this appeal.  The court first denied Schmidt's motion to dismiss, finding that Prime had standing based on Prime's position as a party defendant in the case initiated by Schmidt in Athens County Common Pleas Court.  The court then granted Prime's motion for summary judgment pursuant to a lengthy and detailed decision recounting the general course of litigation between the parties here and Schmidt's litigation against other parties. The court concluded that Schmidt had engaged in vexatious conduct in much of the companion litigation, including conduct that served

only to harass or maliciously injure other parties, conduct not warranted under existing law and not supported by a good faith argument for extension, modification or reversal of existing law, or conduct undertaken solely for purposes of delay. The court noted that Schmidt had opposed Prime's evidentiary submissions in support of summary judgment solely with his own self-serving testimony and affidavit, which contradicted his prior sworn testimony during the preliminary injunction hearing before the magistrate.

{¶ 6}   The court then entered judgment and tailored the R.C. 2323.52 restrictions to actions involving Schmidt's current and former family members and any attorneys involved in litigation involving Schmidt and his family members. The court prohibited Schmidt from instituting legal proceedings in the Court of Claims, court of common pleas, municipal court, or county court without seeking leave from the Franklin County Court of Common Pleas, and from instituting or continuing legal proceedings in the court of appeals other than an application for leave pursuant to R.C. 2323.52(F)(2).

## II. Assignments of Error

{¶ 7}   Schmidt assigns the following errors for our review:

[1.] Genuine issues of material fact exist in the remaining causes preventing summary judgment; the trial court erred in weighing the evidence, believing plaintiff's evidence over defendant's and resolving doubts in plaintiff's favor.

[2.] Plaintiff is not entitled to judgment as a matter of law; defendant did not bring the actions merely to harass or maliciously injure another.

[3.] Defendant's behavior is not habitual, persistent, and without reasonable cause.

[4.] Plaintiff lacks standing to bring this vexatious litigation.

## III. Discussion

{¶ 8}    Schmidt's first three assignments of error go to the applicable law and the available evidence in the summary judgment determination. We discuss them together.

{¶ 9}   Under Civ.R. 56(C), a court may grant summary judgment only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion

being adverse to the party opposing the motion.  *Tokles & Son, Inc. v. Midwestern Indemn. Co., Inc.,* 65 Ohio St.3d 621, 629 (1992), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978).  Additionally, a moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory assertions that the nonmoving party has no evidence to prove its case.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).  Rather, the moving party must point to some evidence that affirmatively demonstrates that the nonmoving party has no evidence to support each element of the stated claims.  *Id.*  "A plaintiff or counterclaimant moving for summary judgment does not bear the initial burden of addressing the nonmoving party's affirmative defenses." *Todd Dev. Co., Inc. v. Morgan*, 116 Ohio St.3d 461, 2008-Ohio-87, syllabus.

{¶ 10} An appellate court's review of summary judgment is de novo.  *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994); *Bard v. Soc. Natl. Bank, n.k.a. KeyBank*, 10th Dist. No. 97APE11-1497 (Sept. 10, 1998).  Thus, we conduct an independent review of the record and stand in the shoes of the trial court.  *Jones v. Shelly Co.,* 106 Ohio App.3d 440, 445 (5th Dist.1995).  As such, we have the authority to overrule a trial court's judgment if the record does not support any of the grounds raised by the movant, even if the trial court failed to consider those grounds.  *Bard.*

{¶ 11} Summary judgment is an appropriate means of resolving a vexatious litigator complaint.  There must remain no genuine issue of material fact, however, regarding the nature of the defendant's conduct and its impact on the cases involved, and the plaintiff must submit appropriate evidence complying with Civ.R. 56.  *See, e.g., Joyce v. Godale*, 11th Dist. No. 2006-G-2692, 2007-Ohio-473 (reversing trial court's grant of summary judgment in favor of plaintiff in vexatious litigator complaint where plaintiff prosecutor's affidavits failed to authenticate documentary evidence in compliance with Civ.R. 56(E).

{¶ 12} The governing law for our review is Ohio's vexatious litigator statute, R.C. 2323.52, which provides in pertinent part as follows:

> (A) As used in this section:
>
> (1) "Conduct" has the same meaning as in section 2323.51 of the Revised Code.

(2) "Vexatious conduct" means conduct of a party in a civil action that satisfies any of the following:

(a) The conduct obviously serves merely to harass or maliciously injure another party to the civil action.

(b) The conduct is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law.

(c) The conduct is imposed solely for delay.

(3) "Vexatious litigator" means any person who has habitually, persistently, and without reasonable grounds engaged in vexatious conduct in a civil action or actions, whether in the court of claims or in a court of appeals, court of common pleas, municipal court, or county court, whether the person or another person instituted the civil action or actions, and whether the vexatious conduct was against the same party or against different parties in the civil action or actions. * * *

(B) A person * * * who has defended against habitual and persistent vexatious conduct in the court of claims or in a court of appeals, court of common pleas, municipal court, or county court may commence a civil action in a court of common pleas with jurisdiction over the person who allegedly engaged in the habitual and persistent vexatious conduct to have that person declared a vexatious litigator. The person * * * may commence this civil action while the civil action or actions in which the habitual and persistent vexatious conduct occurred are still pending or within one year after the termination of the civil action or actions in which the habitual and persistent vexatious conduct occurred.

* * *

(D)

(1) If the person alleged to be a vexatious litigator is found to be a vexatious litigator, subject to division (D)(2) of this section, the court of common pleas may enter an order prohibiting the vexatious litigator from doing one or more of the following without first obtaining the leave of that court to proceed:

(a) Instituting legal proceedings in the court of claims or in a court of common pleas, municipal court, or county court;

(b) Continuing any legal proceedings that the vexatious litigator had instituted in any of the courts specified in division (D)(1)(a) of this section prior to the entry of the order;

(c) Making any application, other than an application for leave to proceed under division (F)(1) of this section, in any legal proceedings instituted by the vexatious litigator or another person in any of the courts specified in division (D)(1)(a) of this section.

* * *

(3) A person who is subject to an order entered pursuant to division (D)(1) of this section may not institute legal proceedings in a court of appeals, continue any legal proceedings that the vexatious litigator had instituted in a court of appeals prior to entry of the order, or make any application, other than the application for leave to proceed allowed by division (F)(2) of this section, in any legal proceedings instituted by the vexatious litigator or another person in a court of appeals without first obtaining leave of the court of appeals to proceed pursuant to division (F)(2) of this section.

{¶ 13} " 'The purpose of the vexatious litigator statute is clear. It seeks to prevent abuse of the system by those persons who persistently and habitually file lawsuits without reasonable grounds and/or otherwise engage in frivolous conduct in the trial courts of this state. Such conduct clogs the court dockets, results in increased costs, and oftentimes is a waste of judicial resources -- resources that are supported by the taxpayers of this state. The unreasonable burden placed upon courts by such baseless litigation prevents the speedy consideration of proper litigation.' " *Mayer v. Bristow*, 91 Ohio St.3d 3, 13 (2000), quoting *Cent. Ohio Transit Auth. v. Timson*, 132 Ohio App.3d 41, 50 (10th Dist.1998). Ohio's vexatious litigator statute has survived due process, equal protection, and as-applied constitutional challenges to its constitutionality under the United States Constitution. *See generally Hall v. Callahan*, 727 F.3d 450 (6th Cir.2013).

{¶ 14} On appeal, Schmidt presents both evidentiary and legal arguments. With respect to the state of the evidence, Schmidt asserts that the trial court eliminated the existence of genuine issues of material fact by falsely categorizing and considering all issues to be questions of law, improperly weighed the credibility of witnesses to ignore conflicting evidence, and completely disregarded Schmidt's affidavits in which he asserted that he did not commence the actions for purposes of harassment or delay. Schmidt also argues that most of the cases relied on by Prime should not be considered because Prime was not a party to those cases, and they terminated more than one year prior to the filing of the present vexatious litigator action.

{¶ 15} Schmidt then proposes that two legal theories should have precluded a vexatious litigator finding. The first is that at all times during the various cases, he proceeded on the advice of counsel, and relied on counsel's professional judgment regarding the advisability of pursuing each particular case or filing within a case. This, he claims, makes his conduct inherently reasonable and justifiable by definition because he could only be expected to rely on the advice and good judgment of his attorneys. The second theory proposes that because courts in some of the cases specifically declined to award sanctions against him, this stands as res judicata to establish the non-vexatious nature of his conduct in those cases.

{¶ 16} Prime relies on six cases in which Schmidt filed allegedly unsupported or legally untenable complaints or otherwise engaged in conduct that satisfies the R.C. 2323.52 definition of "vexatious conduct."

{¶ 17} Four of these actions are directly or indirectly related to Schmidt's divorce from Gasbarro: their divorce action proper, *Schmidt v. Schmidt,* Franklin C.P. No. 12DR-0856, commencing with a complaint filed by Gasbarro ("the divorce action"); a foreclosure action, *Fed. Natl. Mtge. Assn. v. Gina G. Schmidt et al.,* Franklin C.P. No. 12CV-14322, brought by Federal National Mortgage Association against Schmidt and Gasbarro, in which Schmidt filed various cross-claims against Gasbarro that later resulted in an award of sanctions ("the foreclosure action"); a complaint filed by Schmidt in the Franklin County Court of Common Pleas, General Division, on March 26, 2013, stating claims against Gasbarro and her attorneys personally based on alleged abuse of process in the domestic case, *Schmidt v. Grossman Law Offices et al.,* Franklin C.P. No. 13CV-3379

("the Grossman action"); and an action in Athens County against Gasbarro and her attorneys asserting various claims arising out of a removal of personalty from the couple's real estate in that county, *Schmidt v. Grossman Law Offices et al.*, Athens C.P. No. 13CI-103 ("the Athens County action").

{¶ 18} Prime also relies on two cases involving Schmidt and his family members other than Gasbarro. The first of these involved a dispute between Schmidt and his brother over trust assets held in a trust governed under Alaska law: *In re: In the Matter of All Assets of the G-One Trust*, Franklin C.P. No. 12MS-000206 ("the trust action"). In the second of these, the "interpleader action," Schmidt was not a party. His conduct is cited because he allegedly encouraged an attorney, Stanley Shayne, who formerly represented Schmidt's mother, to seek interpleader of the mother's confidential client files with the probate court. *Shayne Nichols, LLC v. J. Daniel Schmidt et al.*, Franklin P.C. No. 562612(A).

{¶ 19} We first examine Schmidt's contention that the trial court could not rely on the older cases when assessing his conduct, or could not consider cases in which Prime was not a party. This court has specifically held that whether vexatious litigator finding is made based on conduct in a single case or across multiple cases, the plaintiff in the vexatious litigator action need not be a party to all cases relied on. *Farley v. Farley*, 10th Dist. No. 02AP-1046, 2003-Ohio-3185, ¶ 48; *Roo v. Sain*, 10th Dist. No. 04AP-881, 2005-Ohio-2436, ¶ 18; *Catudal v. Netcare Corp.*, 10th Dist. No. 15AP-133, 2015-Ohio-4044, ¶ 20. This applies the clear language of R.C. 2323.52(A)(3), which specifies that a complaint may be based on "conduct * * * against the same party or against different parties in the civil action or actions."

> By including the word "actions," the statutes permits a court to examine other actions that a person has participated in to determine if that person is a vexatious litigator. *See Buoscio v. Macejko*, 7th Dist. No. 00-CA-00138, 2003-Ohio-689, ¶ 33 ("Under R.C. 2323.52(A)(3), a person's behavior in prior civil actions can also form the basis for declaring him a vexatious litigator."); *Georgeadis v. Dials*, 10th Dist. No. 99AP-232, 1999 Ohio App. LEXIS 5848 (Dec. 9, 1999) (agreeing with the trial court that the appellant fit the definition of a vexatious litigator because her vexatious conduct was demonstrated by both the instant action and prior actions). Therefore, we

> conclude that the trial court did not err in reviewing Catudal's conduct in other proceedings to adjudge whether he was a vexatious litigator * * * .

*Catudal* at ¶ 8.

{¶ 20} We do not find any restriction on the trial court's reliance on conduct occurring in cases that terminate more than one year before Prime filed its vexatious litigator complaint. Schmidt points to the one-year statute of limitations stated in R.C. 2323.52(A)(3). While that section does state that the vexatious litigator complaint must be *filed* within one year of termination of the action involving the plaintiff, it does not address the use of conduct from older cases. As with any other type of action, there is no authority for the proposition that the statute of limitations that sets a filing deadline must also automatically restrict the chronological scope of the evidence relied on in assessing the defendant's conduct.

{¶ 21} We also reject Schmidt's assertion that, because the courts in all but two of the cases awarded no sanctions in those cases for frivolous conduct under Ohio's general sanctions statute, R.C. 2323.51, the doctrine of res judicata bars a subsequent finding that his actions were frivolous in those cases. While R.C. 2323.51 and 2323.52 sanction similar conduct, they provide different remedies. Pursuant to R.C. 2323.51, a court may award court costs, reasonable attorney fees, and other reasonable expenses as a compensatory remedy to any party adversely affected by another party's frivolous conduct in a given action. "The vexatious litigator statute, while sharing the same definition of reprehensible conduct, seeks to provide a protective remedy in the form of restriction upon future frivolous filings by mandating that a person adjudicated to be a vexatious litigator seek leave of court before proceeding with further filings in the designated cases. The two sections provide complementary, not conflicting, remedies." *Roo* at ¶ 15. "Nothing in either statute precludes a party who has received an award of expenses under R.C. 2323.51 from later requesting relief under R.C. 2323.52 as well." *Catudal* at ¶ 20. Conversely, "[n]othing in either statute requires a party to seek and obtain the R.C. 2323.51 remedy before asking for a vexatious litigator declaration under R.C. 2323.52." *Id.* The refusal of the trial courts to award R.C. 2323.51 sanctions against

Schmidt in some cases does not preclude an examination of his conduct in those cases to support a vexatious litigator determination here.

{¶ 22} Finally, we examine Schmidt's proposition that, as a matter of law, his reliance on the advice of past counsel to justify his filings and other actions in prior litigation precludes any finding that his personal conduct was vexatious. Schmidt asserts that he cannot be personally held to account if his licensed and qualified counsel advised a course of action that was later deemed vexatious.[1]

{¶ 23} There is no authority in Ohio on the question of whether a represented party may find refuge behind the advice of his former counsel when explaining his potentially vexatious conduct before the courts. In the context of this case, we conclude that the past advice of counsel does not screen Schmidt from personal accountability for his vexatious conduct. Particularly in cases such as this one, in which a client repeatedly changes counsel through time and across venues, trial counsel will inevitably be tributary to the representations of a client, particularly a new client, regarding the state of facts and the attitude of the opposing parties. What may seem like sound strategy to counsel functioning with a limited view of the facts and history of the case may be quite clearly unreasonable to the client operating with full knowledge thereof. It is true that legal counsel has a clear duty to investigate the status of the case before undertaking filings. *Bartelt Dancers, LLC v. Icenhour*, 10th Dist. No. 13AP-154, 2013-Ohio-5604, ¶ 11. In this case, however, it is obvious that the cumulative impact of the frivolous and unwarranted conduct across multiple cases is attributable to Schmidt, even if advice of counsel in each instance may—and we assume this solely for purposes of argument—appear facially reasonable when taken in isolation. We conclude that Schmidt's general reliance on advice of counsel in specific instances does not bar a vexatious litigator finding based on his aggregate conduct across an array of cases.

---

[1] We note that this is a distinct question from the broader one of whether the vexatious litigator statute as a whole applies only to conduct occurring while the defendant was acting as a pro se litigant; that issue was not properly raised in the trial court by way of answer or in opposition to summary judgment and is waived on appeal. "It is well settled that a litigant's failure to raise an issue before the trial court waives the litigant's right to raise that issue on appeal." *Gentile v. Ristas*, 160 Ohio App.3d 765, 2005-Ohio-2197, ¶ 74, citing *Estate of Hood v. Rose*, 153 Ohio App.3d 199, 2003-Ohio-3268, ¶ 10; *State ex rel. Zollner v. Indus. Comm.*, 66 Ohio St.3d 276, 278 (1993); *Stores Realty Co. v. Cleveland*, 41 Ohio St.2d 41, 43 (1975) ("[o]rdinarily, errors which arise during the course of a trial, which are not brought to the attention of the court by objection or otherwise, are waived and may not be raised upon appeal").

{¶ 24} With these overarching legal arguments disposed of, we will next examine the conduct of Schmidt in the cases described and relied on by Prime in this matter. For each case, we examine the course of litigation to see if Schmidt's actions obviously served merely to harass or maliciously injure another party, were not warranted under existing law and could not be supported by a good faith argument for extension, modification, or reversal of existing law, or imposed solely for delay. R.C. 2323.52(A)(2). After reviewing the cases and supporting evidence, we will then determine if there remains no genuine issue of material fact, and whether as a matter of law Schmidt is a vexatious litigator by virtue of having habitually, persistently, and without reasonable grounds engaged in vexatious conduct in one or more of the cases. R.C. 2323.52(A)(3).

{¶ 25} In the Franklin County trust action, Schmidt filed pleadings in his capacity as "Trust Protector" of a family trust domiciled in Alaska, despite the fact that prior to commencing the action Schmidt had been removed as trust protector by an Alaska court because under the terms of the trust, a person related to the grantor could not serve as trustee. Schmidt's brother Daniel Schmidt was the grantor of the trust and the beneficiaries were Daniel and Daniel's son Guy, a minor. Schmidt sought an accounting of trust assets and alleged that Daniel had misappropriated assets and otherwise committed malfeasance. Schmidt personally had no beneficial interest in the trust.

{¶ 26} At the injunction hearing in the present case, Prime presented expert testimony from an experienced attorney, Michael Johrendt, to assess Schmidt's conduct in the trust action. Johrendt testified that he had practiced in tax, trust, and business litigation for 36 years. Johrendt testified that certain confidential documents disclosing trust assets had been filed in the Franklin County trust action as exhibits to the complaint, thereby improperly and unnecessarily disclosing trust information. Johrendt opined that there was no basis for Schmidt to seek appointment of a guardian ad litem for his minor nephew, since there was no allegation that Daniel lacked the capacity to protect his son's interest with respect to the trust. Johrendt also further opined that Schmidt's conduct in initiating the Franklin County trust action, requesting a guardian ad litem, and putting himself forward as trust protector after the Alaska court had definitively removed him from that role, were not supported by existing law, could only be intended to harass and injure Daniel Schmidt, and constituted vexatious conduct.

{¶ 27} At the injunction hearing, Schmidt attempted to justify his conduct in bringing the trust action. He stated he felt that when he filed the trust action it did not matter that an Alaska court, exercising its subject-matter and personal jurisdiction over the trust, had previously removed him as trust protector. Schmidt apparently considered himself unbound by the Alaska court's judgment, stating: "Just because an action has been taken doesn't mean it's complete." (Oct. 7, 2013 Tr. Vol. I at 38.)

{¶ 28} The Franklin County Court of Common Pleas dismissed the trust action for lack of subject-matter jurisdiction less than one month after Schmidt filed his complaint. *In the Matter of all Assets of the G-One Trust*, Franklin County C.P. No. 12MS-000206 (Mar. 28, 2012 order granting motion to dismiss with prejudice).

{¶ 29} In the interpleader action, Shayne, who formerly represented Schmidt's mother, Sarah Schmidt, filed an action in the name of his law firm, Shayne Nichols, LLC, to interplead his client files with the probate court, thereby potentially exposing certain confidential documents to improvident disclosure. Shayne's complaint alleged that Sarah Schmidt was the object of undue influence from her son Daniel. While Schmidt was not a party to this action, Schmidt acknowledged that prior to Shayne filing the suit, Schmidt had communicated with Shayne regarding Sarah Schmidt's capacity to execute documents, and Schmidt had taken video of his mother at the hospital while she was preparing for surgery as she executed certain documents provided by Daniel Schmidt. Schmidt later provided the videos to Shayne. Schmidt acknowledged that on the day in question there was a family dispute and his mother had asked him to leave the hospital room.

{¶ 30} Prime's theory is that Schmidt instigated this interpleader action as part of an ongoing family dispute. Prime concedes that Schmidt was not a party to the interpleader action. Our research discloses no Ohio case in which a vexatious litigator determination was based on conduct by a non-litigant. The object of the vexatious litigator statute is to prevent "abuse of the system by those persons who persistently and habitually *file lawsuits* without reasonable grounds and/or otherwise engage in frivolous conduct *in the trial courts of this state*." (Emphasis added.) *Timson* at 50. The statute is not intended to address conduct occurring outside the purview of the court, and, as a result, we give no weight to any aspect of the interpleader action.

{¶ 31} The third action described in this case is the Franklin County divorce action between Schmidt and Gasbarro. Trial in the divorce matter was eventually set for April 25, 2013. Shortly before trial, Schmidt filed the Grossman action and Athens County action described below, naming Gasbarro's then-domestic counsel, Anthony R. Auten, Andrew Grossman, and the Grossman Law Offices as defendants. This created a conflict and forced Gasbarro to change domestic counsel at the last hour, retaining Christopher Geer.

{¶ 32} The parties ultimately reached an agreement reflected in an agreed judgment entry and decree of divorce entered on April 29, 2013. Geer testified at the injunction hearing that Schmidt thereafter failed to comply with the terms thereof by refusing to sign the quit claim deed for the former marital residence, refusing to sign over an insurance check to pay for repairs on the home, and refusing to sign over title to a vehicle awarded to Gasbarro in the divorce decree. Based on this and other conduct, the domestic relations court eventually held Schmidt in contempt and sentenced him to 15 days in jail subject to purge by compliance with various orders. The court also imposed a fee sanction based on frivolous conduct.

{¶ 33} When Geer filed the motion for contempt on behalf of Gasbarro, Schmidt issued ten subpoenas in preparation for the contempt hearing, including subpoenas directed to Geer and other attorneys at the firm, including Michael Close. These subpoenas were extraordinarily broad, and Close, a former common pleas and appellate judge, would testify at the injunction hearing that in 38 years of practice as an attorney and judge, he had never seen a similar abuse of subpoena practice except from another, unnamed vexatious litigator. Close testified that he had never represented or opposed Schmidt in legal proceedings, and that Schmidt's subpoenas were overly broad and sought documents pertaining to all 58 attorneys at the firm. None of the information sought was relevant to the divorce, except possibly Geer's fees in that case. Geer testified that the subpoena addressed to him requested all records, notes, emails, faxes, correspondence, timesheets, reports, photos, logs, estimates, phone records, billable records, and quotes on billable hours. Most of this material would have been privileged, with the exception of Geer's billing records, which he intended to produce anyway in order to support his motion for fee sanctions.

{¶ 34} In the Grossman action against Gasbarro's counsel, Schmidt made claims for abuse of process, intentional infliction of emotional distress, and negligent infliction of emotional distress—all stemming from allegedly false information provided to the Franklin County Domestic Relations Court during the course of the divorce proceeding. Schmidt attached to his complaint a copy of a confidential document, the client intake questionnaire filled out by Gasbarro when retaining the Grossman firm in the divorce. Schmidt then published a redacted version of this questionnaire on a website that he personally created titled www.schmidtvgrossmanlawofficesetal.com and only removed it when compelled by a gag order issued by the domestic court. He also admittedly "passed [the intake questionnaire] out to people." (Oct. 7, 2013 Tr. Vol. I at 123.) Schmidt testified at the injunction hearing that he found the document in the basement of the marital residence after Gasbarro moved out, and disclosed it because he believed that it was evidence of "fraud" committed by Gasbarro and her attorneys. (Oct. 7, 2013 Tr. Vol. I at 112.)

{¶ 35} Gasbarro testified to the contrary that she would not have stored the document in the former marital residence because Schmidt had locked her out by that point. She filed the intake questionnaire in a notebook with other litigation documents, and this eventually disappeared at some point, possibly taken from the back seat of her car. Gasbarro confirmed that the intake questionnaire contained an array of personal and confidential information, including details of Gasbarro's medical history.

{¶ 36} During the injunction hearing, Geer, a former Franklin County Domestic Relations Court judge, testified that the claims against the Grossman firm and individual attorneys had no perceptible legal basis and could only have been asserted to harass opposing parties and delay proceedings, given that the actions were filed shortly before the scheduled trial date and forced Gasbarro to change attorneys.

{¶ 37} The trial court eventually dismissed the Grossman action for lack of subject-matter jurisdiction, finding that all claims arose out of conduct occurring in the divorce case. *Schmidt v. Grossman Law Offices et al.*, Franklin C.P. No. 13CV-3379 (Oct. 23, 2013 order of dismissal).

{¶ 38} Schmidt filed the Athens County action on the same day as the Grossman action, adding Prime as a defendant in addition to Gasbarro's attorneys. The complaint

asserted claims for trespass, conversion, trespass to chattels, intentional and negligent infliction of emotional distress, and civil conspiracy. Schmidt alleged that the defendants, including Gasbarro, with the use of Prime vehicles, had removed Schmidt's personal property from a farm he owned in Athens County. Schmidt testified at the injunction hearing that the defendants in the Athens County Grossman case had violated a domestic relations court order prohibiting removal of personal property, and that he could not obtain redress for this in the divorce proceeding. The Athens County Court of Common Pleas dismissed the Athens County Grossman action for lack of subject-matter jurisdiction. When the defendants sought sanctions, the Athens County Court of Common Pleas determined that the action did not warrant R.C. 2323.51 sanctions.

{¶ 39} The final action relied on by Prime is the Franklin County foreclosure action, which involved the couple's marital residence. In this case, Schmidt filed cross-claims against Gasbarro and attempted to raise the prenuptial agreement between the parties and litigate their respective rights and liabilities regarding the marital home. The trial court dismissed Schmidt's cross-claims in the foreclosure action for lack of jurisdiction, and eventually, on motion by Gasbarro, awarded attorney fees under R.C. 2323.51 because of the frivolous nature of the cross-claims. Franklin C.P. No. 12CV-14322 (Apr. 11, 2013 order granting motion to dismiss cross-claim); Franklin C.P. No. 12CV-14322 (Sept. 19, 2014 order adopting magistrate's decision and awarding sanctions). This court affirmed those sanctions on appeal. *Fed. Natl. Mtge. Assn. v. Schmidt*, 10th Dist. No. 14AP-844, 2015-Ohio-2659. We subsequently denied Schmidt's application for reconsideration, certification of the matter to the Supreme Court, and rehearing en banc. *Fed. Natl. Mtge. Assn. v. Schmidt*, 10th Dist. No. 14AP-844 (Oct. 27, 2015 memorandum decision).

{¶ 40} Based on the evidence in the record, we find that the trial court did not err in concluding that there remained no genuine issue of material fact, and that Schmidt's conduct in the various actions was vexatious under the definition set forth in R.C.2323.52(A)(2). While separate or repetitive actions are not necessary for a vexatious litigator finding, which can be based on actions in a single case, *Roo* and *Farley*, the record in the present case presents overwhelming evidence of Schmidt's determined attempt to misuse the judicial system and employ tactics that served only to harass and

delay without regard for the additional burden on opposing parties and the courts. *Farley* at ¶ 48. "It is the nature of the conduct, not the number of actions, that determines whether a person is a 'vexatious litigator.' " *Borger v. McErlane*, 1st Dist. No. C-010262 (Dec. 14, 2001). Whether undertaken in an array of cases or in a single action, the consistent repetition of arguments and legal theories that have been rejected by the court numerous times can constitute vexatious litigation. *Farley* at ¶ 46; *Caghan v. Caghan*, 5th Dist. No. 2014 CA 00094, 2015-Ohio-1787.

{¶ 41} Based on the actions taken by Schmidt across five cases, we find that the trial court did not err in concluding that Schmidt has engaged in vexatious conduct under R.C. 2323.52(A). His conduct has been habitual, persistent, and without reasonable grounds. The trial court did not err in giving no weight to Schmidt's own self-serving affidavits in which he asserted that he operated with legitimate intent. The standard for vexatious conduct is not, nor can it be, assessed under the subjective opinion of the vexatious litigator regarding his own intentions. Application of an objective standard here maintains consistency in assessing the conduct required for a vexatious litigator determination under R.C. 2323.51 and the standard for an award of sanctions under R.C. 2323.51: "R.C. 2323.51 employs an objective standard in determining whether sanctions may be imposed against either counsel or a party for frivolous conduct." *Sain v. Roo*, 10th Dist. No. 01AP-360 (Oct. 23, 2001), citing *Stone v. House of Day Funeral Serv., Inc.,* 140 Ohio App.3d 713 (6th Dist.2000).

{¶ 42} The trial court properly relied on the objective character of Schmidt's conduct, which was established here both by the state of the record and testimony from expert attorneys that addressed the standard for whether a party's conduct can be deemed vexatious. Schmidt offers his own adamant denial of intent, but no objective evidence to create a genuine issue of material fact regarding his conduct. We find that the trial court did not err in granting summary judgment in favor of Prime and declaring Schmidt to be a vexatious litigator. Schmidt's first three assignments of error are overruled.

{¶ 43} Schmidt's fourth assignment of error asserts that the trial court erred when it denied his motion to dismiss Prime's complaint for lack of standing. Schmidt asserts that Prime was a defendant in only one of the six cited actions and cannot invoke Schmidt's conduct in the other five cases when bringing Prime's vexatious litigator

complaint. This argument lacks merit on its face because it essentially admits Prime's standing as a plaintiff in this vexatious litigator action. By stating that Prime in fact defended at least one of the cases involved, Schmidt concedes that Prime is "a person * * * who has defended against * * * vexatious conduct," R.C.2323.52(B), and thereby qualifies as a plaintiff in this action. Alternatively, if the argument is taken as an objection to the trial court's reliance on Schmidt's conduct in the cases not involving Prime, it is duplicative of the similar arguments rejected in our discussion of Schmidt's first three assignments of error above. Schmidt's fourth assignment of error is accordingly overruled.

## IV. Disposition

{¶ 44} In summary, we overrule Schmidt's four assignments of error and affirm the trial court's judgment determining him to be a vexatious litigator and imposing restrictions on future filings pursuant to R.C. 2323.52.

*Judgment affirmed.*

KLATT, SADLER, and LUPER SCHUSTER, JJ.