[Cite as *Madeira v. Oppenheimer*, 2021-Ohio-2958.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CITY OF MADEIRA, | : | APPEAL NO. C-200458 |
| | | TRIAL NO. A-1802415 |
| Plaintiff-Appellant, | : | |
| | : | *O P I N I O N.* |
| VS. | : | |
| | : | |
| PHILIP DOUGLAS OPPENHEIMER, | : | |
| Defendant-Appellee. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 27, 2021

*Graydon Head & Ritchey LLP*, *Michael A. Roberts* and *Brian W. Fox*, for Plaintiff-Appellant,

*The Law Firm of Curt C. Hartman*, and *Curt C. Hartman*, for Defendant-Appellee.

**BERGERON, Judge.**

{¶1}    After plaintiff-appellant city of Madeira fended off three lawsuits from one of its residents, its frustration overflowed and it demanded that the trial court declare him a vexatious litigator under R.C. 2323.52.  But the city fell well short of the high burden necessary to justify such relief, and the trial court granted summary judgment in the resident's favor.  Madeira now appeals and, because we agree that the city cannot satisfy the statutory elements on the facts it presented, we affirm.

I.

{¶2}    This case represents the culmination of a series of feuds between a politically-active resident, defendant-appellee Philip Douglas Oppenheimer, and the city of Madeira.  As relevant for this appeal, Mr. Oppenheimer filed three cases between 2015 and 2017 that Madeira depicts as vexatious.  Mr. Oppenheimer first tried to block Madeira from selling land in its historic district, insisting that the city's charter required it to preserve historic "properties."  The trial court dismissed the case and we affirmed, holding that the charter defined "properties" as structures, which did not encompass surrounding land.  Mr. Oppenheimer next appealed the city's approval of a commercial building permit, but the trial court dismissed the case because he filed the appeal prematurely—before the planning commission issued its written order.  In his last suit, Mr. Oppenheimer challenged a proposed charter amendment, faulting the city council for failing to follow various technical requirements outlined in its charter.  The trial court again ruled against Mr. Oppenheimer and we ultimately affirmed on mootness grounds because the election had been certified by the time the case arrived on our desk.

2

{¶3} Tired of dealing with this litigation, Madeira turned around and sued Mr. Oppenheimer to have him declared a vexatious litigator under R.C. 2323.52. The trial court ultimately disagreed, granting summary judgment in Mr. Oppenheimer's favor, which prompted the instant appeal.

II.

{¶4} On appeal, Madeira features one assignment of error, disputing the propriety of summary judgment in light of lingering factual disputes. It is well established that "[s]ummary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears after construing the evidence most strongly in the nonmoving party's favor that reasonable minds can come to but one conclusion." *State ex rel. AWMS Water Solutions, L.L.C. v. Mertz*, 162 Ohio St.3d 400, 2020-Ohio-5482, 165 N.E.3d 1167, ¶ 23. Thus, we will affirm only if we determine (on de novo review) that no reasonable factfinder could conclude that Madeira marshaled enough evidence to satisfy the vexatious litigator elements in R.C. 2323.52. *See Al Neyer, LLC v. Westfield Ins. Co.*, 2020-Ohio-5417, 163 N.E.3d 106, ¶ 13 (1st Dist.).

{¶5} R.C. 2323.52 allows a party that has repeatedly encountered vexatious conduct to have the offending person declared a "vexatious litigator." Upon satisfaction of the statutory elements, the provision allows the trial court to prohibit the vexatious litigator from instituting, continuing, or making an application in any legal proceeding without first seeking leave of the trial court making the designation. R.C. 2323.52(D)(1). Furthermore, to ensure enforcement, the statute obliges all Ohio courts to refuse or dismiss any action brought by the vexatious litigator without first obtaining leave to proceed. *See Mayer v. Bristow*, 91 Ohio St.3d 3, 14, 740 N.E.2d

656 (2000) ("R.C. 2323.52(H) and (I) provide for statewide refusal or dismissal of any pleading or action submitted by the vexatious litigator in the absence of leave to proceed.").

{¶6} Mr. Oppenheimer attempts to cut this inquiry off at the pass by deeming the statute limited to pro se litigants and inapplicable to represented parties (in all three cases at hand, he was represented by counsel). We resist Mr. Oppenheimer's invitation to shield himself from scrutiny by virtue of his representation by counsel. While we acknowledge that the statute often applies to pro se parties, no language in the statute indicates that it is so limited. Instead, the statute provides that a vexatious litigator is a *person*, *see* R.C. 2323.52(A)(3), and that courts should evaluate a *party's* conduct, *see* R.C. 2323.52(A)(2). Furthermore, the General Assembly could have easily limited the entire statute to pro se parties, instead reserving that specific limitation to licensed attorneys. *See* R.C. 2323.52(A)(3) (precluding the vexatious litigator designation for attorneys "unless that person is representing or has represented self pro se in the civil action or actions"); R.C. 2323.52(D)(2) (providing that a common pleas court may issue an order preventing an attorney from filing civil actions "only insofar as the person would seek to institute proceedings * * * on a pro se basis"). Thus, if a *party's* conduct is vexatious within the meaning of the statute, a common pleas court may appropriately designate that party as a vexatious litigator (provided the remaining elements are satisfied, of course). *See* R.C. 2323.52(A) and (B). Furthermore, we must take care to ensure that a party is liable only for the consequences of its own conduct, and not that of counsel, because the statute exempts counsel from its purview. *See* R.C. 2323.52(A)(3) (" 'Vexatious litigator' does not include a person

4

who is authorized to practice law in the courts of this state * * * ."). Other provisions exist to address wayward lawyers. *See, e.g.,* R.C. 2323.52(D)(2) (noting other remedies available to address attorney misconduct, such as R.C. 2323.51 and Civ.R. 11).

{¶7} Having determined that R.C. 2323.52 applies to Mr. Oppenheimer, we proceed with our analysis of the statute. The General Assembly provided that a two-pronged test must be satisfied before a trial court may declare someone a vexatious litigator. First, the person must have "engaged in vexatious conduct in a civil action or actions." *See* R.C. 2323.52(A)(3). And second, the vexatious conduct must have been "habitual[], persistent[], and without reasonable grounds." *See id.* However, as the parties' contentions have highlighted, the statute is silent on the burden of proof by which these elements must be established.

{¶8} We ultimately agree with two of our sister courts that the elements in R.C. 2323.52(A)(3) must be established by clear and convincing evidence. *See In re T.D.J., Appeal by S.M.J., Mother*, 8th Dist. Cuyahoga No. 102772, 2016-Ohio-293, ¶ 7 (" '[T]he vexatious litigator designation * * * should be applied * * * on clear and convincing evidence * * * .' "), quoting *Lasson v. Coleman*, 2d Dist. Montgomery No. 21983, 2008-Ohio-4140, ¶ 33. We find the clear-and-convincing standard to be appropriate (as opposed to the lower, preponderance standard) because the statute provides the "extreme measure," s*ee Howdyshell v. Battle*, 5th Dist. Morgan No. 19AP0001, 2019-Ohio-5232, ¶ 15, of curtailing a constitutional guarantee—access to judicial process. S*ee Mayer v. Bristow*, 91 Ohio St.3d 3, 14, 740 N.E.2d 656 (2000). Our constitution provides that "[a]ll courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due

course of law, and shall have justice administered without denial or delay." Ohio Constitution, Article I, Section 16. And as the Ohio Supreme Court has observed, "R.C. 2323.52 is obviously designed to prevent vexatious litigators from gaining direct and unfettered access to our trial courts." *Mayer* at 14. In particular, the statute prevents a "person from engaging the processes of *any* Ohio trial court" unless the person first obtains leave from the trial court that issued the vexatious litigator designation. (Emphasis added.) *Id.*, citing R.C. 2323.52(D)(1). To be sure, the Supreme Court has upheld the constitutionality of R.C. 2323.52 because it does not "preclude vexatious litigators from proceeding forward on their *legitimate* claims." (Emphasis added.) *Id.* at 14, 16. But nonetheless, the limitation of such an important constitutional right should not be permitted, except by clear and convincing evidence. *See, e.g., McKimm v. Ohio Elections Comm.*, 89 Ohio St.3d 139, 147, 729 N.E.2d 364 (2000) (holding that the actual-malice standard, which removes free speech protections provided by the federal and state constitutions, must be proven by clear and convincing evidence); *In re Schmidt*, 25 Ohio St.3d 331, 335, 496 N.E.2d 952 (1986) (holding that the clear-and-convincing standard in R.C. 2151.414 sufficiently protected "the fundamental rights of both parents and children" contained "in both the Ohio and United States Constitutions").

{¶9} With this standard in mind, we first review Mr. Oppenheimer's three lawsuits to identify potentially vexatious conduct. We then evaluate the second prong of the test to determine whether any vexatious conduct (assuming it exists) was habitual, persistent, and without reasonable grounds.

A.

{¶10} "Vexatious conduct" is "conduct of a party in a civil action" that: (a) "obviously serves merely to harass or maliciously injure another party to the civil action"; (b) "is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law"; or (c) "is imposed solely for delay." R.C. 2323.52(A)(2). As already noted, Madeira alleges that three lawsuits Mr. Oppenheimer filed between 2015 and 2017 exhibit vexatious conduct. We evaluate each case in turn.

1.

{¶11} *Historic district case.* Mr. Oppenheimer filed the first case in 2015, challenging Madeira's decision to sell property within its historic district. After Madeira acquired the Muchmore House and two other properties, the city subsequently passed a charter amendment that designated these properties as historic. As relevant here, the charter amendment provided: "These three important and historic properties are to be preserved, protected, and left standing on the same ground that the structures were built upon." Eventually, Madeira decided to sell a portion of land that surrounded the Muchmore House, which prompted Mr. Oppenheimer's suit challenging the potential alienation as running afoul of the charter's requirement that the historic "properties" be preserved. The trial court ultimately dismissed the case and we affirmed, reasoning that "properties" was limited to structures and did not include surrounding land.

{¶12} Madeira primarily portrays the historic district case as vexatious because it was unwarranted under the law. Underscoring the point, Madeira emphasizes that, after the trial court dismissed the case, this court took "no more

7

than a paragraph to dispense with Mr. Oppenheimer's legal theory" and that we overruled every assignment of error.

{¶13} We find Madeira's position without merit, for several reasons. First, assuming the historic district case was unwarranted under the law, Madeira does not even attempt to show how the unjustified legal argument was attributable to *Mr. Oppenheimer*. *See* R.C. 2323.52(A)(2) (" 'Vexatious conduct' means conduct of a *party* * * * .") (Emphasis added.) That is not to say that a party may never be held responsible for the conduct of counsel. *See, e.g., GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 153, 351 N.E.2d 113 (1976) ("This court * * * adopts the general rule that the neglect of a party's attorney will be imputed to the party for the purposes of Civ.R. 60(B)(1) [relief from a judgment or order]."); *Schock v. Brown*, 9th Dist. Summit No. 22107, 2005-Ohio-2159, ¶ 5–11 (holding that a party may be required to pay attorneys' fees as a result of counsel's frivolous conduct); *but see Calypso Asset Mgt., LLC v. 180 Indus., LLC*, 10th Dist. Franklin Nos. 20AP-122 and 20AP-124, 2021-Ohio-1171, ¶ 74 (" 'The objective of the [statute providing for attorneys' fees] is to impose sanctions on the person actually responsible for the frivolous conduct.' "), quoting *Sain v. Roo*, 10th Dist. Franklin No. 01AP-360, 2001 WL 1263665, *8 (Oct. 23, 2001), citing *Ron Scheiderer & Assoc. v. London*, 81 Ohio St.3d 94, 97, 689 N.E.2d 552 (1998). But by its own terms, the vexatious litigator statute targets a *party's* vexatious conduct. Thus, to attribute an attorney's vexatious conduct to his or her client, the party seeking the vexatious litigator designation must show why such an attribution is, in fact, warranted. *See, e.g., Prime Equip. Group, Inc. v. Schmidt*, 2016-Ohio-3472, 66 N.E.3d 305, ¶ 23 (10th Dist.) ("[W]e conclude that the past advice of counsel does not screen [the defendant] from personal

8

accountability for his vexatious conduct.  Particularly in cases such as this one, in which a client repeatedly changes counsel through time and across venues, trial counsel will inevitably be tributary to the representations of a client, particularly a new client, regarding the state of facts and the attitude of the opposing parties.").

{¶14}  In an effort to shift blame to Mr. Oppenheimer, Madeira assures us that the complaint at hand was peppered by sworn facts (by Mr. Oppenheimer) which were not, in fact, true.  To be sure, this is the very type of conduct that may rightly be attributed to a client, even though counsel prepared the filing.  But here, Madeira offers nothing more than a generalized allegation—it neither cites a single claim in the complaint that it believes to be false nor substantiates the point with record evidence.

{¶15}  Finally, even if we imagine a scenario where Mr. Oppenheimer should be held responsible for his attorney's legal argument, we cannot label the historic district case vexatious.  As the Ohio Supreme Court has analogously explained: "Simply filing a losing case or appeal is not automatically 'frivolous.' " *State ex rel. Bunting v. Styer*, 147 Ohio St.3d 462, 2016-Ohio-5781, 67 N.E.3d 755, ¶ 7.  Mr. Oppenheimer's position was that the preservation of "properties" included the preservation of surrounding land, not just the structure.  And while his argument failed to carry the day, we cannot deem this position unwarranted or otherwise unsupported by a good faith argument.

2.

{¶16}  *Zoning case.*  Madeira next showcases a zoning appeal that Mr. Oppenheimer filed in 2016.  An applicant sought a permit with Madeira's planning commission to demolish a small commercial structure and build a new restaurant in

its place, with adjacent public parking. And for reasons not relevant to this case, the permit application generated significant disagreement, even prompting public debate at the meeting the commission held to decide whether to approve the project. Nonetheless, after the dust settled, the commission approved the project 4-3, and Mr. Oppenheimer and two other local businesses appealed that decision to the common pleas court. But at the time of filing the appeal, the commission had not yet issued a *written* decision, which is necessary to render an administrative order final and appealable under R.C. 2506.01. *See Swafford v. Norwood Bd. of Educ.*, 14 Ohio App.3d 346, 348, 471 N.E.2d 509 (1st Dist.1984) ("As a court speaks only through its journal, a public board, commission, or other deliberative body speaks through its minutes or its written record of resolutions, directives, and action. Until such written record is made and approved, not only are the acts in question subject to all the vagueness and uncertainty that characterize oral pronouncements, but they lack the degree of finality necessary to form the predicate for further action or challenge.") (Internal citations omitted.). The trial court ultimately dismissed the appeal for lack of subject matter jurisdiction, but in the interim, the commission reversed course, concluding that an undisclosed "issue" invalidated the commission's vote. Mr. Oppenheimer did not appeal the trial court's dismissal.

{¶17} Madeira does not seriously allege that the substance of the zoning appeal was vexatious (particularly since the commission revisited the matter), instead deeming it vexatious to appeal before the commission issued its written order. Madeira further opines that Mr. Oppenheimer's continued prosecution of the case, after the commission reversed its approval, was especially vexatious because the matter was essentially moot. Ultimately, Madeira's argument suffers the same

fate as above because it fails to show how any of its allegations are attributable to Mr. Oppenheimer. Madeira does not so much as speculate, let alone point to any facts, as to why Mr. Oppenheimer knew, or should have known, that appealing the commission's decision might be unwarranted. Nor does Madeira explain why counsel's continued prosecution of the case, after the commission reversed its decision, was attributable to Mr. Oppenheimer. In sum, these are the very type of strategic decisions that are typically within the purview of counsel, and Madeira points to nothing showing why Mr. Oppenheimer should instead be held responsible.

{¶18} We pause to emphasize how the zoning case illustrates the importance of requiring a showing why actions of counsel should be attributed to the client. Although Madeira makes much ado about the premature appeal of the commission's permit approval, Mr. Oppenheimer's attorney actually brought this very issue to the trial court's attention. Counsel included an explanation in the notice of appeal, claiming that he was acting "out of an abundance of caution," to preserve the appeal, because Madeira's law director indicated that it might not issue a written order. Not only is this type of strategic decision warranted under existing law (premature notices of appeal are filed before us on a regular basis), but attempting to hold clients responsible for reasonable advocacy with jurisdictional consequences at stake runs counter to both the purpose and the language of the statute. Indeed, during the zoning case, Madeira appeared to take the representation at face value, and it never sought sanctions of any kind for the filing.

{¶19} In sum, we conclude that Madeira has failed to show why the conduct it cites in the zoning case should be attributed to Mr. Oppenheimer or why the conduct was vexatious.

11

3.

{¶20} *Election case.* Madeira finally points to a 2017 case in which Mr. Oppenheimer challenged two ballot initiatives altering Madeira's city charter. Madeira's city council adopted two ordinances placing these proposed amendments before the voters, but subsequently discovered typographical errors in both of them. The council then passed a corrective ordinance to fix the mistakes, but Mr. Oppenheimer challenged the ballot initiatives as unlawful for failing to comply with the city charter, among other things. First, he claimed invalidity of the two initial ordinances because the charter requires that proposed ordinances "be read on 3 separate days before its passage, unless such requirement is dispensed with by affirmative vote of at least 5 members." And Mr. Oppenheimer's complaint alleged that neither ordinance referenced any "vote to suspend the 3 reading rule requirement." Second, Mr. Oppenheimer alleged that "neither ordinance states that it was enacted as an emergency or states any reason for the enactment as an emergency," as required by the charter. Third, Mr. Oppenheimer alleged that the corrective ordinance violated the requirement that charter-amendment proposals be adopted no later than 60 days before the election. And the corrective ordinance was adopted approximately six weeks beforehand. Finally, Mr. Oppenheimer alleged that the public notices were deficient because they also contained typographical errors referencing ordinances which did not actually exist.

{¶21} The trial court ultimately dismissed the case, first concluding that Madeira did in fact vote to dispense with the rule requiring the ordinances to be read on three separate days. The court further concluded that Mr. Oppenheimer "presented no evidence" that the ordinances were in fact emergency measures,

12

negating the requirement that the justifications for the emergency determination be included in the ordinance. Finally, the court held that the corrective ordinance satisfied the 60-day minimum because the substance of the proposed amendments remained unchanged, and that the public notice was sufficient. We affirmed on appeal, but not on the merits. The election had been certified by the time we obtained jurisdiction and we therefore dismissed the appeal as moot.

{¶22} Madeira does not specifically challenge these allegations and legal arguments as constituting vexatious conduct. Rather, Madeira zeroes in on certain sworn and allegedly false statements by Mr. Oppenheimer. In these sworn statements, Mr. Oppenheimer casually tosses around concepts such as "sham legal process," "abuse of corporate power," "fraud," and "conspiracy to commit fraud" as he describes the city's actions.

{¶23} The trial court presiding over the election case concluded that Mr. Oppenheimer adduced no evidence supporting allegations of fraud or abuse of corporate powers. For this reason, Madeira argues that a reasonable factfinder could conclude that the entire case was vexatious. We conclude that Madeira overstates the nature and significance of the verified allegations. For one, the specific allegations that Madeira cites sound more like legal conclusions than specific factual assertions. Furthermore, nothing about the trial court's findings show that Mr. Oppenheimer lied. Mr. Oppenheimer's complaint specifically alleged that the ordinance failed to state that it was enacted as an emergency or otherwise provide any reason justifying an emergency. But while these factual allegations assume that the ordinance was passed as an emergency measure, Mr. Oppenheimer was nonetheless careful not to allege personal knowledge of that fact.

13

{¶24} Nonetheless, we acknowledge that several of the allegations were hyperbolic and seemingly unfounded, presenting a close question on whether these specific allegations were vexatious. Thus, without deciding whether this rises to the level of vexatious conduct, we assume that they were and proceed to the second prong of the test to determine whether these allegations were habitual, persistent, and without reasonable grounds. *See* R.C. 2323.52(A)(3).

### B.

{¶25} The Eighth District defines "habitual" as " 'of the nature of a habit; according to habit; established by or repeated by force of habit' or 'doing, practicing, or acting in some matter by force of habit; customarily doing a certain thing.' " *Davie v. Nationwide Ins. Co. of America*, 8th Dist. Cuyahoga No. 105261, 2017-Ohio-7721, ¶ 63, quoting *Webster's Third New International Dictionary* 1017 (1993). However, the conduct does not need to encompass multiple cases to be considered habitual. *See Prime Equip.*, 10th Dist. Franklin No. 15AP-584, 2016-Ohio-3472, 66 N.E.3d 305, at ¶ 40–41 (holding that "separate or repetitive actions are not necessary" for a finding that conduct is habitual because it "can be based on actions in a single case"). Furthermore, "persistent" conduct is " 'continuing in a course of action without regard to opposition or previous failure; tenacious of position or purpose.' " *Davie* at ¶ 63, quoting *Webster's Third New International Dictionary* 1686 (1993). Finally, we note that no Ohio court has defined "without reasonable grounds."

{¶26} Even viewing Mr. Oppenheimer's election lawsuit in a light most favorable to Madeira, we readily conclude that Madeira cannot show that the handful of hyperbolic allegations were habitual and persistent. At best, Madeira has shown

only an isolated example of vexatious conduct—a single complaint with several overly broad assertions. And Madeira advances no argument on how we could conclude otherwise, instead hinging its success on all three cases being vexatious. Thus, even viewing the careless allegations in the election suit in a light most favorable to Madeira, we conclude that Madeira cannot satisfy the second prong of the vexatious litigator test.

\*    \*    \*

{¶27} For the reasons above, on the facts at hand, we agree with the trial court that Madeira could show no genuine issue of fact whether Mr. Oppenheimer was a vexatious litigator. We therefore overrule Madeira's sole assignment of error and affirm the trial court's grant of summary judgment in Mr. Oppenheimer's favor.

Judgment affirmed.

**MYERS, P. J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion

15